Case No. 26-5303

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA
*Plaintiff—Appellee*

v.

KENTUCKY COUNCIL ON POSTSECONDARY EDUCATION, *et al.*
*Defendants—Appellees*

and

KENTUCKY STUDENTS FOR AFFORDABLE TUITION
*Defendant-Intervenor—Appellant*

On Appeal from the United States District Court for the Eastern District of Kentucky, Frankfort Division
Case No: 3:25-cv-00028

# APPELLANT'S REPLY BRIEF

Thomas A. Saenz
**Mexican American Legal Defense and Educational Fund**
634 S. Spring Street, Floor 11
Los Angeles, CA 90014
(213) 629-2512
tsaenz@maldef.org

Susana A. Sandoval Vargas
Olivia Alden
**Mexican American Legal Defense and Educational Fund**
100 N. LaSalle Street, Suite 1900
Chicago, IL 60602
(312) 224-4340
ssandovalvargas@maldef.org
oalden@maldef.org

Date: October 16, 2026

*Counsel for Appellant*

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 2

**I. KSAT Has Standing to Appeal** .......... 2

*a. KSAT has a Cognizable Injury Traceable to the District Court's Order Adopting Appellees' Consent Judgment* .......... 3

*b. KSAT's Injury is Redressable by a Favorable Decision* .......... 5

**II. CPE's Remaining Arguments Are Forfeited** .......... 10

**III. Section 8(4)(a) Is an "Enactment of State Law"** .......... 10

*a. Section 8(4)(a) is a State Law* .......... 11

*b. State Regulation is an "Enactment of State Law"* .......... 12

*c. There is No Reason to Construe Section 1621(d) So Narrowly* .......... 15

**IV. Such a Narrow Construction of Section 1621(d) Would Violate the Tenth Amendment** .......... 17

*a. The Federal Government Cannot Interfere with the State's Choice as to How to Organize Its Government* .......... 17

*b. The Court Can and Should Avoid the Constitutional Question* .......... 20

**V. Section 8(4)(a) Complies with Section 1623(a)** .......... 21

*a. Arguments as to Section 1623(a) Are Not Before This Court* .......... 21

*b. Section 8(4)(a) Does Not Make Undocumented Students Eligible Based on Where They Make Their "Actual Dwelling Place in Fact"* .......... 21

*c. The United States' Construction Would Violate the Tenth Amendment* .......... 26

**CONCLUSION** .......... 27

**CERTIFICATE OF COMPLIANCE** .......... 29

**CERTIFICATE OF SERVICE** .......... 30

**ADDENDUM** .......... 31

# TABLE OF AUTHORITIES

**Cases**

*Alford v. Deffendoll*, 165 F.4th 490, (6th Cir. 2026) .................................... 10, 12
*Am. Ass'n of Nurse Anesthesiology v. Kennedy*, 183 F.4th 427(6th Cir. 2026). .......7
*Arizonans for Off. English v. Arizona*, 520 U.S. 43 (1997).....................................5
*Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994)..............4
*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006)....20
*Baltimore & Ohio R. Co. v. City of Piqua, Ohio*¸ No. C-3-85-312, 1986 WL 8254 (S.D. Ohio June 30, 1986) ...........................................................................13
*BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230 (2021) ...... 15, 24
*Bryant v. Yellen*, 447 U.S. 352 (1980)........................................................................4
*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) .....................................................5
*Centre College v. Trzop*, 127 S.W.3d 562 (Ky. 2003) .................................. 14, 15
*Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008) ................. 2, 3, 4
*City of Columbus v. Ours Garage and Wrecker Servs., Inc.*, 536 U.S. 424 (2002) ................................................................................................................ passim
*Ctr. for Powell Crossing, LLC v. Ebersole*, 696 Fed.Appx. 702 (6th Cir. 2017)......5
*DePierre v. United States*, 564 U.S. 70 (2021).......................................................25
*Diamond v. Charles*, 476 U.S. 54 (1986) ..................................................................4
*Epic Systems Corp. v. Lewis*, 584 U.S. 497, 523 (2018) .........................................14
*Feliciano v. Dept. of Transportation*, 605 U.S. 38 (2025) .......................................23
*Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019) ................11
*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. 608 (2026).........................................................................................................24
*Garland v. Cargill*, 602 U.S. 406 (2024)..................................................................25
*Haaland v. Brackeen*, 599 U.S. 255 (2023)................................................................8
*Hagan v. Farris*, 807 S.W.2d 488 (Ky. 1991)...........................................................8
*Hardin v. Louisville/Jefferson Cty. Metro. Gov.*, 701 S.W.3d 155 (Ky. 2024).......16
*Hollingsworth v. Perry*, 570 U.S. 693 (2013)............................................................5
*HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382 (2021). ..................................................................................................... 12, 15
*In re Vargas*, 10 N.Y.S. 3d 579 (2015)....................................................................20
*Jones v. United States*, 529 U.S. 848 (2000) ......................................................20, 26
*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996)....................................8
*Levin v. Miss. River Fuel Corp.*, 386 U.S. 162 (1967) ...........................................12
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................6

*Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023) ............................ 14, 15
*M.L. Johnson Family Properties, LLC v. Bernhardt*, 924 F.3d 842 (6th Cir. 2019) .............................................................................................................12
*Martinez v. Regents of the Univ. of California*, 241 P.3d 855 (Cal. 2010) ...... 14, 22
*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ..............................17
*Murphy v. NCAA*, 584 U.S. 453 (2018) .......................................................... 18, 19
*Nixon v. Missouri Municipal League*, 541 U.S. 125 ....................................... 18, 19
*Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) ...................................................17
*Rice v. Village of Johnstown, Ohio*, 30 F. 4th 584 (6th Cir. 2022) ...........................5
*Sierra Club v. Morton*, 405 U.S. 727 (1972) ...........................................................3
*Summit Locations, LLC v. Bd. of Trs., Bath Twp., Ohio*, No. 25-3833, 2026 WL 2619658 (6th Cir. Sept. 4, 2026). ......................................................................9
*SW Nashville EB Owner, LLC v. Metro. Gov't of Nashville & Davidson Cnty.*, 187 F.4th 807 (6th Cir. 2026) ..................................................................................21
*Telespectrum, Inc. v. Public Serv. Com'n of Kentucky*, 227 F.3d 414 (6th Cir. 2000). ...................................................................................................................12
*Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522 (6th Cir. 2014) ....................................................................................................................10
*United Auto., Aerospace & Agric. Implement Workers of Am. Loc. 3047 v. Hardin Cnty., Kentucky*, 842 F.3d 407 (6th Cir. 2016)...................................................17
*United States v. Hall*, 979 F.2d 320 (3d Cir. 1992) ...............................................13
*United States v. Johnson*, 529 U.S. 53..................................................................16
*United States v. Virginia, No.* 3:25CV1067, 2026 WL 2984988 (E.D. Va. Oct. 5, 2026) ........................................................................................... 23, 24, 25
*United States v. Walz*, 825 F.Supp.3d 897 (D. Minn. 2026); ........................... 22, 23
*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).................................................6, 9
*Van Buren v. United States*, 593 U.S. 374 (2021) ..................................................23
*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ....................................8

**Constitutional Provisions**

Const. Amend. X..................................................................................................26

**Other Authorities**

AN ACT relating to immigrants, H.B. 352, 2025 Ky. Leg. (Feb. 2025) (introduced)..........................................................................................................9
ENACTMENT, Black's Law Dictionary (12th ed. 2024)................................13, 14
H.R. Rep. No. 104-725, at 383..............................................................................18

Ky. Admin. Reg. 749-751 (September 2002)....................7
STATE LAW, Black's Law Dictionary (12th ed. 2024)....................11

**Statutes**

8 U.S.C. § 1101(a)(33).................... 22, 24
8 U.S.C. § 1621(d) .................... passim
8 U.S.C. § 1623(a) .................... passim
8 U.S.C. § 1641....................22
Ky. Rev. Stat. Ann. § 13B. 150(c)....................15
Ky. Rev. Stat. Ann. § 164.020(8)(a).................... passim
Ky. Rev. Stat. Ann. § 83A.060 ....................13

**Regulations**

13 Ky. Admin. Regs. 2:045 § 1(5)....................23
13 Ky. Admin. Regs. 2:045 § 8(4)(a) .................... passim

## INTRODUCTION

The district court enjoined a 20-year-old regulation that allowed countless undocumented students, like the members of Kentucky Students for Affordable Tuition ("KSAT"), to pursue college degrees. Since KSAT consists of the persons directly regulated by 13 Ky. Admin. Regs. 2:045 § 8(4)(a) ("Section 8(4)(a)") it is a proper party to defend its constitutionality. Indeed, because the Kentucky Council on Postsecondary Education ("CPE") refused to defend its own regulation, it is up to KSAT to pursue this appeal and vindicate its members' rights.

The district court erred in interpreting 8 U.S.C. § 1621(d) ("Section 1621(d)") beyond the statute's text to exclude state regulations. Statutory exceptions are an equally important part of Congress' work, and courts have no license to limit them so arbitrarily. Worse, such a narrow construction of Section 1621(d) unconstitutionally infringes on the states' rights to organize the structure of their own governments. Reversal is warranted on that basis alone. The United States and CPE's new arguments on appeal are forfeited and unavailing.

Additionally, the United States spends much of its brief on an issue that is not before this Court. If the United States wants a ruling as to 8 U.S.C. § 1623(a)'s ("Section 1623(a)") preemptive effect, the proper course is to reverse and remand to allow the district court to make a determination in the first instance. Appellees provide no reason as to why this Court should consider these issues now.

Even if this Court decides to reach this issue, Section 8(4)(a) does not grant any benefit based on where an undocumented student makes their actual dwelling place in fact. Section 1623(a) thus has no bearing on Section 8(4)(a). If it did, then Section 1623(a) would unconstitutionally bootstrap Congress' authority over immigration regulation to dictate state policy on tuition rates for citizens residing in other states.

For these reasons, the judgment of the district court should be reversed and remanded to allow the district court the first opportunity to address the United States' remaining arguments.

## ARGUMENT

### I. KSAT Has Standing to Appeal

It is well-established that "an intervenor normally has the right to appeal an adverse final judgment by a trial court, just as any other party can." *Cherry Hill Vineyards*, *LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008). CPE does not dispute that. *See* Br. of CPE at p. 10. Moreover, KSAT plainly has Article III standing because (1) its members lost access to the regular tuition rate that Section 8(4)(a) provided, (2) that injury is traceable to the district court's order adopting the consent judgment declaring Section 8(4)(a) invalid, and (3) the injury is likely to be redressed by the requested relief. *See Cherry Hill Vineyards*, 553 F.3d at 428.

### *a. KSAT has a Cognizable Injury Traceable to the District Court's Order Adopting the Consent Judgment*

KSAT has standing to defend in its own right because its members are harmed by the loss of the regular tuition rate that Section 8(4)(a) provided. After the district court adopted the consent judgment and declared Section 8(4)(a) invalid, tuition rates increased to more than double for all undocumented students seeking a public higher education in the state of Kentucky, which includes KSAT's members. The members' injury is "the type of palpable economic injur[y] that 'ha[s] long been recognized as sufficient to lay the basis for standing.'" *Cherry Hill Vineyards*, 553 F.3d at 428 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972)). Injury here is exacerbated because such increases in tuition put a higher education out of reach for most students who relied on the affordable tuition rates.

CPE does not appear to dispute that KSAT and its members are harmed by the loss of the regular tuition rate, nor that the injury can be traced back to the district court's order. *See* Br. of CPE at p. 10-11. Moreover, this Court has already rejected the proposition CPE advances that "only the state has the direct stake required to defend a statute." *See* Br. of CPE at p. 9. In *Cherry Hill Vineyards*, this Court held that an intervenor had standing to appeal to defend the constitutionality of a state law—even though the state declined to appeal—because the intervenor independently established Article III standing. 553 F.3d at 430. Indeed, the Supreme Court has similarly held that a private intervenor has standing to defend the

constitutionality of a federal law on appeal where that private party has "a sufficient stake in the outcome of the controversy," despite the federal government's withdrawal from the case. *Bryant v. Yellen*, 447 U.S. 352, 367-68 (1980).

*Cherry Hill Vineyards* is controlling: "*Diamond* [*v. Charles*, 476 U.S. 54 (1986),] does not preclude intervenors from appealing when the state fails to appeal." 553 F.3d at 429-30. The Court also declined to apply *Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994), as broadly as CPE asks the Court to do so here. *See id.*

KSAT's members are not equivalent to the intervenors in *Diamond* or *Associated Builders*, who did not have a direct or personal stake in the outcome of the controversy. In those cases, the intervenors sought to defend the state's regulation of *other people*; their "own conduct [was] neither implicated nor threatened." *Diamond* 476 U.S. at 56. To the contrary, KSAT and its members are the "intended target[s] or beneficiar[ies] of the statute." *Associated Builders*, 16 F.3d at 694 (Merritt, J., concurring). KSAT's members have suffered "a concrete economic loss as a result of the district court's judgment." *Id.* at 429.

*Hollingsworth v. Perry* is inapplicable here for the same reasons. 570 U.S. 693 (2013). Unlike the intervenors there, KSAT's members have more than a general interest, they have a personal, direct stake in Section 8(4)(a)'s validity. Indeed, only undocumented students, like KSAT's members, are harmed by the consent

judgment. *See Rice v. Village of Johnstown, Ohio*, 30 F. 4th 584, 592 (6th Cir. 2022) (party challenging government action or inaction can demonstrate injury in fact when they are the object of governmental regulation).

The remaining cases CPE cites also dealt with private parties who did not have a "direct stake" in the outcome of the controversy. *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 66 (1997) (sponsor of ballot initiative did not have standing to appeal where it was "not bound by the judgment"); *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 Fed.Appx. 702, 705-06 (6th Cir. 2017) (no "personal stake" where intervenor was not regulated by ballot initiative he sponsored).

Because KSAT suffered a concrete injury as a result of the consent judgment, KSAT independently satisfies Article III standing.

*b. KSAT's Injury is Redressable by a Favorable Decision*

The requested relief, overturning the consent judgment, will remedy KSAT's injury.[1] "Where there is no doubt that the plaintiff is the direct object of the law, regulation, or government action, 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Carman v. Yellen*, 112 F.4th 386, 407-08 (6th Cir. 2024)

---

[1] No party challenges the district court's conclusion that the consent judgment "is in conflict with Kentucky law," (Order granting Consent J., R. 56, PageID #468) which means it's illegal. *Id.* at PageID # 463-64; *contra* Br. of United States at p. 15.

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Because KSAT's members are the direct object of Section 8(4)(a), KSAT's injury would plainly be redressed by reversal of the district court's decision. *Contra* Br. of CPE at p. 11. Even the district court recognized that "KSAT members will benefit from a ruling that § 8(4)(a) is constitutional and be harmed by a ruling that §8(4)(a) is unconstitutional." Order granting KSAT's Mot. to Intervene, R. 38, at PageID #299 n. 5.

That KSAT did not ask for a "definitive ruling," and rather asked for remand on the remaining issues that the district court has not addressed, does not mean that KSAT's injury is not redressable by a favorable decision from this Court. Nothing in the redressability doctrine requires that the Article III injury be fully or solely redressable by a favorable decision. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) ("the ability 'to effectuate a partial remedy' satisfies the redressability requirement") (internal quotation omitted).

Before the district court enjoined Section 8(4)(a), KSAT's members qualified for regular tuition rates. Reversal restores the status quo. CPE describes this as "speculative" because of its own speculation as to what it itself *might* do that could affect Section 8(4)(a) in the future. *See* Br. of CPE at p. 12. But whatever CPE chooses to do in the future does not change that KSAT's members will benefit from reversal now.

This Court's decision in *Am. Ass'n of Nurse Anesthesiology v. Kennedy* is distinguishable. There the Court determined that redressability was "speculative," where plaintiffs sought an order that would require a state agency to enforce provisions of law, because the law made enforcement subject to agency discretion. 183 F.4th 427, 435 (6th Cir. 2026). In contrast, there is no such discretion here. If the consent judgment is lifted, Kentucky public postsecondary institutions will be required to charge KSAT's members the regular tuition rate, as they have for two decades. Ky. Admin. Reg. 749-751 (September 2002).

CPE "is responsible for promulgating the regulation setting the criteria for residency determinations," Br. of CPE at p. 12, and the public postsecondary institutions are "supposed to follow the regulation." Hrg. Transcript, R. 56, PageID # 421. In making "final decisions as to whether any specific individual qualifies for in-state tuition," the institutions must do so "according to the criteria" set by CPE. Br. of CPE at 12-13. If the district court's decision were reversed and individual institutions refused to grant undocumented Kentucky high school graduates the regular tuition rate, they would be violating the law.[2]

---

[2] CPE appears to disclaim its authority to create regulations which the institutions must follow. Br. of CPE at p. 12-13. If CPE did not have that authority, the district court's order would need to be vacated as wholly advisory and this action dismissed because CPE had no power to redress the United States' claimed injury, the alleged violation of federal law. The only proper defendant would be the individual institutions. Federal courts only have the power "to enjoin individuals tasked with

CPE's reliance on *Kardules v. City of Columbus* and *Haaland v. Brackeen* is misplaced. In *Kardules*, the Court concluded the plaintiffs failed to establish an injury in fact, which necessarily means there was nothing to redress. 95 F.3d 1335, 1355 (6th Cir. 1996). And in *Haaland*, the Court held the plaintiff's injury was not redressable because the parties the plaintiffs wanted to enjoin would not be bound by the court's decision. 599 U.S. 255, 293 (2023). In contrast, reversal here would again give Section 8(4)(a) the force and effect of law. Br. of Commonwealth of Kentucky at p. 11. In that case, CPE would be required to enforce it. *See Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991) ("An agency must be bound by the regulations it promulgates").

CPE could attempt to repeal Section 8(4)(a) in the future. But future repeal is speculative at best. By its own admission, CPE entered into the consent judgment rather than repealing Section 8(4)(a) because repealing the regulation requires "a pretty lengthy process." Hrg. Transcript, R. 56, PageID # 423-24. The repeal process requires CPE to "promulgate a new regulation that has to go through a process that's about a minimum of a six months [sic] process to put it out for public comment." *Id.* Then, "[i]t goes before a [regulation] review in the legislature." *Id.* CPE "does not have the authority to summarily strike one of its regulations, or otherwise declare it

---

enforcing laws, not the laws themselves." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021).

invalid, without following the statutorily proscribed procedures." Order granting Consent J., R. 57, PageID #464. Moreover, during Kentucky's last legislative session, the Kentucky General Assembly refused to overturn Section 8(4)(a); the bill did not even make it out of committee. AN ACT relating to immigrants, H.B. 352, 2025 Ky. Leg. (Feb. 2025) (introduced).

Even if CPE were to subsequently repeal Section 8(4)(a), KSAT's members would at minimum qualify for the regular tuition rate for an additional six months, and they would be entitled to redress for the period the consent judgment was wrongly in effect. The continued availability of that educational opportunity, even if limited, is redress. *See Uzuegbunam*, 592 U.S. at 292. Reversal of the district court's decision will redress KSAT's injury.[3]

[3] Because KSAT has standing, it has also presented a justiciable "case" on appeal. *See Summit Locations, LLC v. Bd. of Trs., Bath Twp., Ohio*, No. 25-3833, 2026 WL 2619658, at *2 (6th Cir. Sept. 4, 2026).

## II. CPE's Remaining Arguments Are Forfeited[4]

CPE's remaining arguments should be deemed forfeited because CPE raises them for the first time on appeal. *Alford v. Deffendoll*, 165 F.4th 490, 499 (6th Cir. 2026). CPE chose not to file any briefs in the district court. It would be inappropriate and prejudicial to KSAT to have to respond to CPE's arguments—for the first time—in this reply brief. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 528-29 (6th Cir. 2014).

While an appellate court may consider forfeited arguments in "exceptional" circumstances, it is CPE's burden to identify such circumstances, and it has failed to do so. *Id.*

## III. Section 8(4)(a) Is an "Enactment of State Law"

Congress carefully chose "enactment of State law" in Section 1621(d) over other terms. Congress could have just as easily chosen "legislative enactment" or "State statute," but it did not. Still, the United States insists that this Court read these

---

[4] The Commonwealth argues KSAT "has forfeited any objection to the consent judgment's main substance." Br. of Amicus Curiae Commonwealth of Kentucky at p. 8. The subject of this dispute is whether the district court correctly decided to enter the consent judgment upon finding "a violation of federal law." Order granting Consent J., R. 57, PageID #474. The alleged violation of federal law was an alleged violation of the Supremacy Clause, *i.e.* that the regulation was preempted. That is the "main substance" of KSAT's opening brief; KSAT has not forfeited any preemption arguments.

other words—that Congress did not choose—into the federal statute. But a court cannot "arbitrarily *constrict* [the statute] by adding limitations found nowhere in its terms." *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (emphasis in original).

Further, the Supreme Court has explained that "[a]bsent a clear statement to the contrary, "Congress's reference to the 'regulatory authority of a State' should be read to preserve, not preempt, the traditional prerogative of the States to delegate their authority to their constituent parts." *City of Columbus v. Ours Garage and Wrecker Servs., Inc.*, 536 U.S. 424, 429 (2002). The United States' construction of Section 1621(d) does the opposite.

Under its ordinary meaning, Section 8(4)(a) is an "enactment of State law."

*a. Section 8(4)(a) is a State Law*

The United States no longer disputes that a state regulation is "State law," at least when interpreting the term on its own. *See* Br. of the United States at p. 25. It appears to have abandoned the argument it made before the district court. And CPE has forfeited any arguments. *See supra*, Section II.

State regulations, such as Section 8(4)(a), are "State law." STATE LAW, Black's Law Dictionary (12th ed. 2024) ("[a] body of law in a particular state consisting of the state's constitution, statutes, *regulations*, and common law.") (emphasis added). Because Section 1621(d) does not expressly define the term

"State law," the term receives its ordinary meaning. *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021). Under its ordinary meaning, 'State law' embraces the use of *any* state law." *See M.L. Johnson Family Properties, LLC v. Bernhardt*, 924 F.3d 842, 851 (6th Cir. 2019) (citing *Levin v. Miss. River Fuel Corp.*, 386 U.S. 162, 168 (1967) (emphasis in original)).

*b. State Regulation is an "Enactment of State Law"*[5]

Nothing in the text of Section 1621(d) or any other binding authority restricts "enactments" to legislation. Section 1621(d) simply does not contain the restrictions that the United States asks this Court to read into the statute. The text of Section 1621(d) does not say it can only be satisfied through a "legislative enactment," and courts "may not amend or add to the plain language of a statute." *See Telespectrum, Inc. v. Public Serv. Com'n of Kentucky*, 227 F.3d 414, 421 (6th Cir. 2000).

Contrary to the United States' assertions, there is nothing "bizarre" about referring to a regulation as an "enactment." Br. of United States at p. 17. Federal courts have long recognized that "an enactment" does not refer exclusively to

[5] The United States presents a new argument. In the district court, the United States only argued that Section 8(4)(a) is not a "State law." *See* Am. Complaint, R. 4, at PageID #39, ¶ 30; Resp. in Opp. Mtn. to Intervene, R. 34, at PageID #242-43; Reply in Supp. Mtn. for Consent J., at PageID # 390-91. But now, the United States asserts—for the first time—that Section 8(4)(a) is not an "*enactment* of State law." *See* Br. of United States at p. 25. (emphasis added). Because it did not present this argument before the district court, there is no need for this Court to consider it now. *Alford*, 165 F.4th at 499.

legislation. For example, federal courts have concluded that in the context of the Assimilative Crimes Act, federal regulations constitute an "enactment of Congress." *United States v. Hall*, 979 F.2d 320, 322 (3d Cir. 1992) (collecting cases). Such courts have explained that "regulations can be treated as enactments of Congress because they have been promulgated pursuant to a specific congressional delegation." *Id.* (internal citations omitted). Section 8(4)(a) was enacted in the same manner—by a specific delegation of the Kentucky legislature. *See* Ky. Rev. Stat. Ann. § 164.020(8)(a).

Moreover, in Kentucky, "enactments" do not exclusively refer to state statutes or state legislation. Municipal ordinances are "enactments." Ky. Rev. Stat. Ann. § 83A.060; *contra* Order granting Consent J., R. 57, at PageID # 471 (citing *Baltimore & Ohio R. Co. v. City of Piqua, Ohio*¸ No. C-3-85-312, 1986 WL 8254, at *5 (S.D. Ohio June 30, 1986). The United States does not cite to any authority indicating that Section 8(4)(a) should be treated any differently than these municipal enactments.

The United States points to the Black's Law Dictionary to support its restrictive reading of "enactment" in Section 1621(d). Br. of United States at p. 17, 19. But the Black's Law Dictionary definition of enactment does not say that *only* a statute constitutes an enactment. To the contrary, the first definition defines the term as "[t]he action or process of making into law." ENACTMENT, Black's Law Dictionary (12th ed. 2024). A statute is but one example of that definition.

Administrative rulemaking is also a process "of making into law" since "all agree" that administrative regulations carry the force of law. Br. of Amicus Curiae Commonwealth of Kentucky at p. 3.

As for the House Conference Report that the United States cites, the Supreme Court has held time and again that "legislative history is not the law." *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 523 (2018). The legislative history cannot make the statute say something it does not. It would be "unreasonable to conclude that Congress intended to require the states to comply with section 1621's express requirements *and* to scour committee reports for other possible requirements not visible in the statutory language." *Martinez v. Regents of the Univ. of California*, 241 P.3d 855, 868 (Cal. 2010) (emphasis in original). The best way to determine the contours of the statute is by looking at the statute itself. *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 150 (2023). And the plain language of Section 1621(d) does not say "legislative enactment."

Finally, CPE's forfeited arguments also fail. CPE's interpretation of its enabling statute is entitled to no deference. Ky. Rev. Stat. Ann. § 13B.150(c). Neither Kentucky courts nor the Kentucky Revised Statutes construe "enactment" in the way CPE advocates. In fact, in a case CPE relies on, the Kentucky Supreme Court used the terms "enact" and "promulgate" interchangeably. *See Centre College*

*v. Trzop*, 127 S.W.3d 562, 567 (Ky. 2003) ("The statutes under which those regulations were enacted specifically provided for the safety of citizens").

*c. There is No Reason to Construe Section 1621(d) So Narrowly*

The best way to effectuate a statute's purpose is to examine the statute itself. *Luna Perez*, 598 U.S. at 150. Looking to PRWORA's purpose, the United States asserts that PRWORA encourages immigrants to be "self-reliant." Br, of United States at p. 16. That creates a paradox: immigrants should be self-sufficient, but through this litigation, the United States seeks to limit the avenues by which an immigrant can become self-reliant. *See* Br. of Amicus Curiae National Education Association at p. 16-19 (explaining students that pursue postsecondary education have higher earnings among other socioeconomic benefits). Eliminating the ability of undocumented immigrants to pursue higher education does not make them more self-reliant.

The United States' premise that statutory exceptions must be read narrowly is wrong. *BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 239 (2021). A statutory exception is just as important a part of Congress' work, and therefore "statutory exceptions are to be read fairly, not narrowly." *HollyFrontier*, 594 U.S. at 396. "A congressional decision to enact both a general policy that furthers a particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception." *Ours*

*Garage*, 536 U.S. at 441. Such a narrow construction is particularly inappropriate here where it is not supported by the statute's text.

The statute itself is the limit, a state may provide public benefits for undocumented immigrants "only though the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). CPE did so. Even the Commonwealth recognizes that Section 1621(d) "closes the door on those public benefits for unlawful aliens, but it doesn't slam it shut." Br. of Amicus Curiae Commonwealth of Kentucky at p. 8. Interpreting the statute as the United States advocates here would require the Court to read exceptions into the statute that do not exist in its text. *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others").

That regulations are subordinate to legislation, is true, but immaterial. Even if CPE had not forfeited this argument, what is important is that CPE has the authority to "[d]etermine tuition" without exception. Ky. Rev. Stat. Ann. § 164.020(8)(a). "A legislature making no exceptions to the positive terms of a statute is presumed to have intended to make none." *Hardin v. Louisville/Jefferson Cty. Metro. Gov.*, 701 S.W.3d 155, 165 (Ky. 2024) (internal citations omitted).

## IV. Such a Narrow Construction of Section 1621(d) Would Violate the Tenth Amendment

### *a. The Federal Government Cannot Interfere with the State's Choice as to How to Organize Its Government*

When each of the fifty states entered the union, they retained "absolute discretion" to "allocate the powers of [their] subsidiary bodies among elected and non-elected leaders and policymakers." *Phillips v. Snyder*, 836 F.3d 707, 715 (6th Cir. 2016). Suggesting otherwise "would be revolutionary to our way of government, even assuming that a government under such a constraint could even function." *Id.* That discretion includes the authority to "allocate the lawmaking function to whichever branch of state government they may choose." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 462 n. 6 (1981). Appellees' and the Commonwealth's construction of Section 1621(d) interferes with that "absolute discretion," which is why their interpretation triggers a constitutional conflict.

The United States misunderstands this argument. Section 1621(d) is not facially unconstitutional. Rather, the exclusion of regulation from "State law" in section 1621(d) would unconstitutionally infringe on state governments' power to structure their own governments. *See United Auto., Aerospace & Agric. Implement Workers of Am. Loc. 3047 v. Hardin Cnty., Kentucky*, 842 F.3d 407, 416 (6th Cir. 2016).

The United States highlights that the Conference Report states that "[o]nly the affirmative enactment of a law by a State legislature and signed by the Governor after the date of enactment of this Act, that references this provision, will meet the requirements of this section." H.R. Rep. No. 104-725, at 383. Taking that argument to its logical conclusion, if a state legislature passed a law granting benefits to undocumented immigrants over the governor's veto, then that would not satisfy Section 1621(d). *Id*. Such an interpretation would be both absurd and unconstitutional. *See Murphy v. NCAA*, 584 U.S. 453, 474 (2018) (it would be "as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals"). That is the problem with the district court's order, it sets no limiting principle. Given these constitutional problems and the inherent unreliability of conference reports, KSAT's authorities are more instructive.

Neither Appellees nor the Commonwealth engage with these authorities or their holdings. The United States only attempts to distinguish *Nixon v. Missouri Municipal League*, contradicting its entire argument. 541 U.S. 125. The United States contends that *Nixon* "merely creates a default rule and saves the full menu of options available to the state legislature should it choose to act." Br. of United States at p. 22. But the Kentucky legislature here *did* choose to act: it delegated the authority to "[d]etermine tuition" to CPE. Ky. Rev. Stat. Ann. § 164.020(8)(a). It did

not place limitations on that authority. If the "full menu" of legislative options remains available, as the United States claims, that must necessarily include the option to delegate authority to exercise the state's Section 1621(d) opt-out right. That is what the United States claims the Kentucky legislature could not do here, and precisely why this construction violates the Tenth Amendment.

The reason *Nixon* is relevant here is because it restates the well-established rule that federal statutes should be "read in a way that preserves a State's chosen disposition of its own power." *Nixon*, 541 U.S. at 140. Part of that disposition of its own power is to delegate power amongst its "constituent parts", like local governments and administrative agencies. *Ours Garage*, 536 U.S. at 429. The Kentucky legislature chose to delegate its authority to "[d]etermine tuition" to CPE, without qualification. Ky. Rev. Stat. Ann. § 164.020(8)(a). That delegation of power "is not a legitimate concern of the federal government." *In re Vargas*, 10 N.Y.S. 3d 579, 582 (2015).

The United States attempts to avoid this constitutional concern by arguing Section 1621(d) "does not require Kentucky to do anything at all." Br. of United States at p. 9. But just as the federal government cannot issue orders to the states, it cannot compel the states *not* to act. *Murphy*, 584 U.S. at 474-75. The United States' interpretation of Section 1621(d) tells the state it cannot delegate the power to

"[d]etermine tuition" to an administrative agency. That is just as offensive to the Tenth Amendment as commanding the state to pass a statute.

*b. The Court Can and Should Avoid the Constitutional Question*

Constitutional avoidance demands KSAT's textual interpretation apply. *Jones v. United States*, 529 U.S. 848, 857 (2000). The United States argues constitutional avoidance does not apply because KSAT's constitutional argument is "insubstantial." The United States does not cite to any authority in support of that argument. At least one court has explicitly held that the narrow reading of Section 1621(d) the United States advances "unconstitutionally infringes on the sovereign authority of the state to divide power among its three coequal branches of government." *In re Vargas*, 10 N.Y.S. 3d 579, 582 (2015).

The United States further contends that if Section 1621(d) were unconstitutional, the Court could invalidate it in full. Br. of United States at p. 22. This misconstrues KSAT's argument. KSAT does not argue Section 1621(d) is facially unconstitutional; it is unconstitutional under a construction that excludes state regulations as "State law." Thus, KSAT is not asking the Court to invalidate any law. Rather, the Court would only need apply the proper, constitutional reading of the statute. This is the appropriate remedy given that courts "try not to nullify more of the legislature's work than is necessary." *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328 (2006).

## V. Section 8(4)(a) Complies with Section 1623(a)

### *a. Arguments as to Section 1623(a) Are Not Before This Court*

This Court need not consider whether Section 1623(a) preempts Section 8(4)(a) because that question is not before it. The United States spends a substantial portion of its brief arguing Section 8(4)(a) is preempted by Section 1623(a), despite the fact that the district court expressly "refrain[ed] from wading into the ultimate § 1623 preemption issue." R. 57 at PageID # 474. Since the district court declined to address the issue, this Court should "adhere to the general practice" and "remand for the district court to address the issue" in the first instance. *SW Nashville EB Owner, LLC v. Metro. Gov't of Nashville & Davidson Cnty.*, 187 F.4th 807, 817 (6th Cir. 2026). There is no reason for the Court to depart from this "general practice" and consider whether Section 1623(a) preempts Section 8(4)(a) now, nor has the United States pointed to one.

### *b. Section 8(4)(a) Does Not Make Undocumented Students Eligible Based on Where They Make Their "Actual Dwelling Place in Fact"*

If the Court chooses to reach the Section 1623(a) question now, Section 8(4)(a) does not violate Section 1623(a) because it does not confer a benefit based on "residence"—where the student makes their "actual dwelling place in fact." 8 U.S.C. § 1101(a)(33). 8 U.S.C. § 1641 provides that the definitions in 8 U.S.C. §

1101(a)(33) apply to all parts of that chapter, including Section 1623(a). The Court must apply that definition.

If Congress had intended to prohibit states entirely from making undocumented immigrants eligible for in-state tuition, it could easily have done so. Br. of United States at p. 37. Thus, Section 1623(a)'s "reference to the benefit being on the basis of residence must have some meaning." *Martinez*, 241 P.3d at 864. Congress supplied that meaning in 8 U.S.C. § 1101(a)(33): "actual dwelling place in fact."

Section 8(4)(a) is "entirely agnostic" (Br. of United States at p. 27) as to where the undocumented student makes their "actual dwelling place in fact." 8 U.S.C. § 1101(a)(33). Section 1623(a) is therefore inapplicable. The United States argues that Section 1623(a) "refers to a state's determination of residence within a state." Br. of United States at p. 30. That is incorrect. 8 U.S.C. § 1641 directly applies the definition "actual dwelling place in fact" to Section 1623(a). The United States did not and cannot dispute that. *See United States v. Walz*, 825 F.Supp.3d 897, 909 (D. Minn. 2026); *United States v. Virginia, No.* 3:25CV1067, 2026 WL 2984988, at *11 (E.D. Va. Oct. 5, 2026).[6] When a statute includes an explicit definition of a term,

[6] The court in *Virginia* misstates the district court's holding here in a footnote. The district court expressly declined to address whether Section 8(4)(a) granted benefits on the basis of residence. *See* Order granting Consent J., R. 57, PageID # 474. Nevertheless, *Virginia*'s preemption analysis is instructive.

[courts] must follow that definition." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (internal quotations omitted). Courts do not have discretion to say a term means something else when Congress has spoken. *Feliciano v. Dept. of Transportation*, 605 U.S. 38, 50 n. 4 (2025).

The fact that the regulation calls undocumented students "residents" "*for tuition purposes*" does not, as the United States claims, make it a residency requirement. 13 Ky. Admin. Regs. 2:045 § 1(5) (emphasis added); Br. of United States at 27. Because there is a controlling federal definition, how the state chooses to define and determine residence is immaterial.[7] Rather, the question Section 1623(a) asks is can an undocumented student be eligible "if their principal, actual dwelling place is outside [Kentucky]?" *Walz*, 825 F.Supp.3d at 909. Here, as in Minnesota and Virginia, the answer is yes, because high school graduation in a state is not dependent on residence. *Id.*; *Virginia*, 2026 WL 2984988, at *11. Further, in Kentucky, an undocumented student qualifies regardless of *when* they graduated from high school. *See* 13 Ky. Admin. Regs. 2:045 § 8(4)(a). An undocumented student could graduate from a Kentucky high school, live in another state for decades, and still qualify. If a student hasn't lived in Kentucky for decades and still

[7] This especially true where the state's use of "resident" seems to be simply for ease of categorization, not for purposes of eligibility.

qualifies for the benefit, then the benefit is not granted based on the student's "actual dwelling place in fact" being Kentucky. 8 U.S.C. § 1101(a)(33).

The best evidence of a statute's meaning is its text. *See FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. 608, 621 (2026) (in statutory interpretation "[t]he judicial task is to read words, not minds"). Thus, the United States' argument that the "plain meaning" of Section 1623 is that "when a state establishes a scheme under which state residents who are U.S. citizens are charged one price and those who live elsewhere are charged more, aliens who are not lawfully present in the United States are not eligible for the lower rate," is incorrect. Br. of United States at p. 27. That is not what the statute says, so that cannot be its plain meaning. *See FS Credit Opportunities*, 608 U.S. at 623. Section 1623(a) is not a complete ban, which the United States recognizes. Br. of United States at p. 37. If Congress had wanted Section 1623(a) to be a categorical ban, then that's the law it would have written. *See Virginia*, 2026 WL 2984988, at *12. Because it did not, the focus is "on the language it *did* employ." *BP P.L.C.*, 593 U.S. at 240 (emphasis in original).

KSAT's construction of the statute merely gives meaning to each word in the statute, and in the case of "residence," the meaning Congress gave it. The United States is incorrect to argue that construction "would almost completely neuter § 1623." Br. of United States at p. 30. "A law is not useless merely because it draws a

line more narrowly than one of its conceivable statutory purposes might suggest." *Garland v. Cargill*, 602 U.S. 406, 427 (2024). *See also DePierre v. United States*, 564 U.S. 70, 82 (2021) (a statute's "inartful legislative drafting, however, does not excuse [courts] from the responsibility of construing a statute as faithfully as possible to its actual text"). Construing the statute faithfully to its text means applying the definition of the term "residence" that Congress gave it.[8]

Section 8(4)(a) is therefore not a residency requirement, and Section 1623(a) is inapplicable.[9]

---

[8] Rendering the clause "on the basis of residence" in section 1623 superfluous would violate basic rules of statutory construction. *See Virginia*, 2026 WL 2984988, at *11.

[9] The United States argues that if Kentucky had made "in-state tuition available to U.S. citizens and nationals with perfect SAT scores," regardless of residence, then undocumented students in Kentucky with perfect SAT scores would "remain eligible for in-state tuition." Br. of United States at 33. In other words, the United States argues that Kentucky must simply also "provide that benefit to similarly situated U.S. citizens and nationals who are not residents of Kentucky." *Id.* at p. 10. Kentucky law functions in the same way, students are eligible irrespective of immigration status or residence if they graduated from a Kentucky high school. "Identically situated" U.S. citizens and nationals, those that graduated from a Kentucky high school, are also eligible. See Ky. Rev. Stat. Ann. § 164.020(8)(a). To the extent they are not, the remedy is not to penalize the undocumented students by striking 8(4)(a), but to extend the benefit to all Kentucky high school graduates by changing any problematic provision in Ky. Rev. Stat. Ann. § 164.020.

*c. The United States' Construction Would Violate the Tenth Amendment*[10]

A reading of Section 1623(a) that invalidates Section 8(4)(a) results in a federal intrusion into a domain wholly reserved to the states. It is this reading, not the statute itself, that is unconstitutional. That KSAT's (proper) construction of Section 1623(a) would provide the states greater latitude in assessing benefits for undocumented immigrants is not "meaningless happenstance," (Br. of United States at p. 32) but the essence of federalism. Since the United States admits that Section 1623(a) is not a complete ban, (Br. of United States at p. 37) the states necessarily reserve the right to extend postsecondary education benefits to undocumented immigrants based on *other* criteria. Const. Amend. X. That is what Kentucky did here.

To the extent the United States reads Section 1623(a) as a condition that the states cannot provide regular tuition rates to students without lawful immigration status unless the states change their laws to confer regular tuition rates to all U.S. citizens and nationals, that condition violates the Tenth Amendment. Under that condition, Congress is using its power over immigration to force states to legislate in a particular manner, with the major effect on education policy regarding citizens residing in other states. That uses Section 1623(a) as a "sword" (Br. of United States

[10] The Court need not reach this argument if it agrees Section 8(4)(a) does not grant a benefit on the basis of residence. *See Jones*, 529 U.S. at 857.

at p. 37) to insert the federal government into state legislatures' business. The United States does not point to anything that gives Congress the power to impose such a condition that intrudes on state education policy.

The United States cannot bootstrap its authority over immigration regulation to dictate state policy on tuition rates for citizens residing in other states; otherwise, there would be no practical limit on federal authority. Under the United States' proffered view, Congress could condition any immigration-related matter on compliance with congressional preference on any issue or issues wholly outside federal authority. The Tenth Amendment is not nearly so toothless. The federal government cannot condition state discretion in an area of delegated federal authority on compliance with policy preferences completely outside federal authority.

## CONCLUSION

Accordingly, the judgment of the district court should be reversed and remanded for further consideration of the United States' challenge to the validity of Section 8(4)(a).

Dated: October 16, 2026

Respectfully submitted,

*/s/ Olivia Alden*

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

Thomas A. Saenz
643 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Phone: (213) 629-2512
Email: tsaenz@maldef.org

Susana A. Sandoval Vargas
Olivia Alden
100 N. LaSalle St., Suite 1900
Chicago, IL 60602
Phone: (312) 427-0701
Email: ssandovalvargas@maldef.org
Email: oalden@maldef.org

*Attorneys for Appellant Kentucky Students for Affordable Tuition*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6, 465 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(5) and Sixth Circuit Rule 32(b)(1). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman font) using Microsoft Word (the same program used to calculate the word count).

/s/ *Olivia Alden*
Attorney for Appellant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2026, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *Olivia Alden*
Attorney for Appellant

# ADDENDUM
# DESIGNATION OF RELEVANT DOCUMENTS

| Docket Entry No. | Description | Page ID # Range |
|---|---|---|
| 1 | United States' Complaint | 1-14 |
| 4 | United States' Amended Complaint | 30-43 |
| 24 | Joint Motion for Entry of Consent Judgment | 112-115 |
| 25 | Proposed Consent Judgment | 116 |
| 38 | Order Granting KSAT's Motion to Intervene | 286-304 |
| 43 | KSAT's Response in Opposition to Joint Motion for Entry of Consent Judgment | 356-374 |
| 48 | United States' Reply in Support of Joint Motion for Entry of Consent Judgment | 384-404 |
| 56 | Transcript of Hearing on Joint Motion for Entry of Consent Judgment | 416-453 |
| 57 | Memorandum Opinion & Order Granting Joint Motion for Entry of Consent Judgment and Adopting Proposed Consent Judgment | 454-475 |
| 58 | Notice of Appeal | 476-477 |